IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES HAROLD MADISON, #163664, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:10-CV-675-WKW |
| ) | [WO] |
| ) | |
| DR. JOHN PEASANT, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by James Harold Madison ["Madison"], an indigent state inmate, challenging the adequacy of medical treatment provided to him for a right inguinal hernia during his incarceration at the Ventress Correctional Facility in 2010. Madison names Dr. John Peasant, the attending prison physician, Nettie Burks, the Health Services Administrator for Ventress, and Celeste Hunter, the Director of Nursing at Ventress, as defendants in this cause of action.[1] Madison seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report and relevant supporting evidentiary materials, including affidavits and medical records, addressing Madison's claims for relief. Pursuant to the

---

[1] The plaintiff improperly identifies defendant Hunter as Ms. Hunt. For purposes of this Recommendation, the court refers to this defendant by her proper name. In addition, the undisputed evidentiary materials filed by the defendants establish that defendants Burks and Hunter did not personally participate in the provision of medical treatment to Madison.

orders entered in this case, the court deems it appropriate to construe the aforementioned report as a motion for summary judgment. *Order of September 21, 2010 - Doc. No. 12*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Madison is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987)

(If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material

fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Although provided an opportunity to do so with explicit instructions regarding the manner in which to respond to a motion for summary judgment, Madison filed nothing in opposition to the defendants' report/motion. Madison has therefore failed to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

Madison asserts that during the months prior to filing this complaint Dr. Peasant provided inadequate medical treatment to him for a right inguinal hernia. *Complaint - Doc. No. 1* at 3-4. Specifically, Madison alleges Dr. Peasant should have referred him to a free-world specialist for evaluation and addressed his intermittent complaints of pain with medication. *Id*. Dr. Peasant adamantly denies he acted with deliberate indifference to Madison's medical needs and, instead, maintains that Madison received appropriate treatment for his hernia.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his

6

serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

7

In order to properly establish "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of

8

>   constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir.

9

1990).

The affidavit filed by Dr. Peasant addresses the allegations of inadequate treatment presented by Madison. A thorough review of the evidentiary materials filed in this case demonstrates that this affidavit is corroborated by the objective medical records compiled contemporaneously with treatment provided to Madison relative to the instant claim of deliberate indifference. Dr. Peasant explains the nature of an inguinal hernia and addresses Madison's claims, in pertinent part, as follows:

> During the years of my practice, I have on numerous occasions evaluated persons who suffer from various types of hernias. An inguinal hernia occurs when a muscle in the groin area becomes weakened and permits tissue to be pushed through the muscular wall. The tissue pushing through the muscle wall of the groin may cause a bulge in the groin or scrotum. Hernias most often occur in those individuals who are overweight or engage in a great degree of lifting or straining. A large number of inguinal hernias are asymptomatic and do not pose any specific risks to the patient and/or pose any long-term health complications for patients. One of the key clinical factors in determining the appropriate course of treatment for inguinal hernias constitutes a physical examination of the hernia and a determination as to whether the hernia is "reducible" or not. An inguinal hernia is "reducible" if applying pressure to the hernia permits a physician to compress the hernia in such a fashion so as to push the bulging tissue back through the muscle wall in the groin. If a hernia should not be reducible at any point in time, then surgery is necessary and appropriate. Another relevant factor in the evaluation of a hernia involves a determination through a physical examination as to whether a hernia exhibits "strangulation," which essentially involves the entrapment of other tissue, fluid or organs in an extended herniation through the muscle wall. Strangulation can be confirmed or ruled out through a simple physical examination of a patient's hernia.
> At no time during my examination[s] of Mr. Madison did he ever indicate or demonstrate that his hernia was not reducible or strangulated. It is commonly accepted in the field of medicine that the initial course of treatment for a patient with a hernia is compression of the hernia through the use of a binding truss, which basically constitutes a cloth wrapping utilized to compress the tissue back inside the muscular wall. In some instances, the use of a truss over the course of a period of months may result in a self-correction of a hernia without surgery and the pain and complications associated with surgery. Surgical repair of a hernia

is appropriate if prolonged use of the truss does not correct the hernia or if the hernia is not reducible. In addition to the risks inherent in any surgical procedure, the surgical repair of a hernia does not always result in a correction of the hernia and there exists a significant likelihood that a surgical repair of a hernia may not prevent a recurrence of the original hernia or result in additional hernias. Given these risks, the use of a truss is the first step in the course of treatment for a hernia. [In addition, Madison was closely monitored by the medical staff in the chronic care clinic with respect to a cardiovascular condition and any treatment provided for his hernia was addressed in light of this condition and the medications prescribed for such condition. Madison was prescribed various medications for treatment of his high blood pressure, chest pains, urinary dysfunction and tuberculosis, including a large daily dosage of aspirin.]

In January of 2010, Mr. Madison [made his initial request for] evaluation by the medical staff at Ventress for a hernia which had developed. Mr. Madison attended an appointment with me on January 4, 2010, at which time he stated that he was experiencing a hernia which was "pressing against [his] bladder." My initial evaluation confirmed that Mr. Madison's hernia was not a life-threatening condition and did not require any immediate surgical intervention. In fact, my notes clearly indicated that his inguinal hernia was "soft – non-strangulated – easily reducible." [The notes from this examination also indicate that Madison's pain most likely resulted from an enlarged prostate, condition for which Madison received medication.] During this appointment, I discussed Mr. Madison's condition with him at length in an effort to educate him as to the exact nature of his hernia and the means of treating this condition, including the truss which I prescribed following this appointment. Mr. Madison acknowledged his understanding and did not voice any objection to the treatment plan described to him at that time.

Plaintiff submitted a sick call request form on January 27, 2010, on which he described the nature of his problem as simply "Hernia." On January 29, 2010, [Madison presented to the health care unit with the concern that his hernia would disappear then re-appear. In response to Madison's concern,] a member of the medical staff examined Mr. Madison's hernia ... and did not see any reason for concern. [Madison was advised to follow-up with the medical staff as needed and again educated on the nature of his condition, appropriate activities and the necessity of using the truss prescribed for his hernia.] After Plaintiff submitted a sick call request form on April 1, 2010, and was seen during sick call, I examined him later on that same day, at which time he reported that the hernia expanded when he stood for long periods of time and he experienced some discomfort at night. [Medical personnel continued the treatment plan and advised Madison of precautions he should undertake to prevent aggravating his condition.]

Plaintiff submitted a sick call request form on April 13, 2010, requesting

to see a specialist for evaluation of his hernia. The medical staff conducted another examination of Mr. Madison on April 13, 2010. During the appointment, [it was noted that] Mr. Madison was [again] not wearing the truss because he claimed it had been "sent... to the laundry." This is consistent with Mr. Madison's failure to follow other directives and recommendations made to him by me and other members of the Ventress medical staff [regarding critical non-compliance issues regarding his failure to report for essential medications]. Mr. Madison denied any symptoms related to his hernia including abdominal pain, nausea or vomiting. As indicated in the note[s] from this patient interaction, Mr. Madison's hernia was reducible, "[n]onstrangulated," and not indicative of any partiulcar mass. The [treatment] plan developed, following this appointment, included patient education and management through the use of the truss. [Madison was advised to follow up with the medical staff when necessary regarding the condition of his hernia.]

The medical staff saw Mr. Madison during sick call on April 19, 2010, when he complained of shortness of breath. During this evaluation, Mr. Madison did not report any problems or complaints with his inguinal hernia, but voiced complaints related to his respiratory distress that was likely the result of his continued smoking.

When I evaluated Mr. Madison on June 24, 2010, I conducted a physical examination and Mr. Madison specifically stated that he felt "good." He did not voice any complaints to me regarding his hernia at the time of this appointment.

Mr. Madison was next scheduled for an appointment with me on July 5, 2010. Following the July 5, 2010, appointment, I entered orders for Mr. Madison to receive a new truss for his inguinal hernia and to attend a follow-up appointment with me in approximately 2 weeks. Mr. Madison received a new truss for his inguinal hernia on July 6, 2010. At that time, he was directed to return for a follow-up appointment with me on July 20, 2010.

Mr. Madison returned for a follow-up appointment with me on July 20, 2010. At the time of this appointment, Mr. Madison did not voice any complaints of any kind related to his inguinal hernia and most of his concerns related to the areas on his face where moles had been recently removed. Mr. Madison did not report any complaints to me of pain or discomfort with respect to his hernia. He did not request any further treatment of any kind for his hernia. Therefore, I did not see any reason to order any further treatment beyond the new truss which had been provided to him merely 2 weeks prior to the appointment.

In the case of Mr. Madison, I do not believe that the course of treatment provided to him was inappropriate in any way. Likewise, I am not aware of any additional medical treatment of any kind that should have been provided by any other physician or specialist which would remedy Mr. Madison's hernia in a different manner.... I have not denied and am not aware of any other member of the medical staff at Ventress who denied Mr. Madison any necessary medical

>treatment or ignored his complaints. I have examined Mr. Madison on a regular basis regarding his hernia and [in my professional opinion] prescribed the appropriate manner of treatment. In the event that his condition may change in the future, [medical personnel] will continue to monitor his condition and make judgments as to the appropriate means of treatment based upon the nature of his condition.

*Exhibit 1 to the Defendants' Special Report (Aff. of Dr. John Peasant) - Doc. No. 8-1* at 3-7.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by defendant Peasant in addressing Madison's right inguinal hernia did not violate his constitutional rights. Dr. Peasant examined Madison upon the inmate's initial request for evaluation of the hernia. Based on this examination and his evaluation of Madison's condition, Dr. Peasant chose a conservative course of treatment. The undisputed medical records further demonstrate that correctional medical personnel examined Madison each time he submitted a sick call request regarding his hernia, educated Madison with respect to his condition, prescribed a truss for use in alleviating the pain and other impairments associated with the hernia, issued limited lifting profiles and provided continuous access to health care providers in an effort to monitor his condition. The medical care Madison received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Madison simply fail to establish deliberate indifference by the defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground

13

constitutional liability. In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Madison received medical care for his hernia. It is likewise evident that Dr. Peasant rendered treatment to Madison in accordance with his professional judgment. Based on well settled law cited herein, Madison's mere desire for a different mode of medical treatment does not constitute deliberate indifference. In addition, Madison has failed to present any evidence which indicates that Dr. Peasant knew that the manner in which he provided treatment created a substantial risk to Madison's health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Madison's hernia. Consequently, summary judgment is due to be granted in favor of the defendants. *Carter*, 352 F.3d at 1350.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

    4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 3, 2013 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 14th day of May, 2013.

                                      /s/Terry F. Moorer
                                      TERRY F. MOORER
                                      UNITED STATES MAGISTRATE JUDGE